# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2019 ND 284

State of North Dakota,                                        Plaintiff and Appellee

    v.

James Dubois, Jr.,                                          Defendant and Appellant

### No. 20190062

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Kimberlee J. Hegvik (appeared), Assistant State's Attorney, and Emily J. Christensen (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, Fargo, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1] James Dubois, Jr., appeals from a criminal judgment entered after the district court revoked his probation and resentenced him to five years' incarceration. He argues the court abused its discretion in revoking his probation and the sentence was illegal. We affirm.

I

[¶2] In 2017, Dubois plead guilty to two counts of criminal trespass and refusal to halt. The first criminal trespass count was a class C felony for which he was sentenced to a term of eighteen months' commitment to the North Dakota Department of Corrections and Rehabilitation, first to serve 90 days with the balance suspended for eighteen months of supervised probation, to be served concurrently with the other two counts.

[¶3] In January 2019, a probation officer petitioned to revoke Dubois' probation, alleging he committed three new criminal offenses, and a fourth allegation that was later dismissed. Dubois was convicted of each of the three offenses. Dubois admitted the allegations at the revocation hearing and asked to be placed back on probation. The district court rejected that request and asked for an alternative recommendation from Dubois. Dubois then argued for a sentence of time already served. The court revoked his probation and resentenced him to five years' incarceration with credit for time previously served.

II

[¶4] Dubois argues the district court abused its discretion in revoking his probation. "In an appeal of a probation revocation, we first review the district court's factual findings under the clearly erroneous standard and then review the court's decision to revoke probation under the abuse of discretion standard." *State v. Dockter*, 2019 ND 203, ¶ 11, 932 N.W.2d 98. Here, the factual findings are not at issue, because Dubois admitted the allegations in

the petition. Therefore, we review only for an abuse of discretion. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Kalmio v. State*, 2019 ND 223, ¶ 22, 932 N.W.2d 562 (quoting *City of Napoleon v. Kuhn*, 2016 ND 150, ¶ 8, 882 N.W2d 301).

[¶5] Section 12.1-32-07(6), N.D.C.C., authorizes a district court to revoke probation for a violation of probation conditions occurring before the expiration or termination of the period of probation. As a result of the three new offenses to which Dubois admitted, the court had legal authority to revoke his probation. The State recommended the previous sentence be revoked and for Dubois to be resentenced to serve five years with credit for time served. The State's recommendation was based on Dubois' criminal history, including previous failures on probation resulting in his probation being revoked. The State described convictions in 2015 for felony assault and in 2016 for simple assault. Prior to sentencing Dubois, the court considered his criminal history and specifically noted the seriousness of the new offense. By revoking probation for new criminal offenses after considering Dubois' criminal history, the court did not act arbitrarily, unreasonably, or unconscionably and did not abuse its discretion.

III

[¶6] Dubois argues the district court abused its discretion in resentencing him because it did not analyze each factor of the statutory sentencing factors under N.D.C.C. § 12.1-32-04. A court has discretion in sentencing, and review of a sentence is generally limited "to whether the trial court acted within the statutorily prescribed sentencing limits or substantially relied on an impermissible factor." *State v. Gonzalez*, 2011 ND 143, ¶ 6, 799 N.W.2d 402. In *Gonzales*, this Court addressed sentencing following revocation of probation and stated, a court need not explicitly reference the statutory sentencing factors when fixing a sentence. *Id*. at ¶ 8. The record does not show the court substantially relied on an impermissible factor and we conclude the court did not abuse its discretion.

IV

[¶7] Dubois argues the district court's new sentence of five years' imprisonment is illegal because it exceeds the balance of the eighteen-month term to which he was originally sentenced. In support, he cites N.D.C.C. § 12.1-32-07(6), which states:

> The court, upon notice to the probationer and with good cause, may modify or enlarge the conditions of probation at any time prior to the expiration or termination of the period for which the probation remains conditional. If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing or deferment. In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant.

Dubois argues the last sentence of N.D.C.C. § 12.1-32-07(6) limits a court's resentencing authority on revocation of probation to the balance of a previously suspended sentence. Review of the transcript of the revocation hearing and the record show Dubois did not make this argument to the court.

[¶8] Issues not raised in the district court cannot generally be raised for the first time on appeal. *State v. Dockter*, 2019 ND 203, ¶ 8, 932 N.W.2d 98. The purpose of an appeal is to review the actions of the court, rather than to give the appellant an opportunity to develop new theories of strategies. *Id.* We may, however, consider an issue raised for the first time on appeal if it rises to the level of obvious error. *Id.* (relying on *State v. Alberts*, 2019 ND 66, ¶ 7, 924 N.W.2d 96). In order to establish obvious error, the defendant must demonstrate plain error affecting substantial rights. *Id. See also* N.D.R.Crim.P. 52(b). To show obvious error there must be a clear deviation from an applicable legal rule. *Dockter*, at ¶ 8.

3

[¶9]   We have long held that the current provisions of N.D.C.C. § 12.1-32-07(6) allow a district court to impose any sentence available at the initial time of sentencing upon revocation of probation.  *Peltier v. State*, 2003 ND 27, ¶ 13, 657 N.W.2d 238; *Davis v. State*, 2001 ND 85, ¶ 13, 625 N.W.2d 855; State *v. Lindgren*, 483 N.W.2d 777, 779 (N.D. 1992); *State v. Gefroh*, 458 N.W.2d 479, 483 (N.D. 1990); *State v. Vavrosky*, 442 N.W.2d 433, 437 (N.D. 1989).

[¶10] Our longstanding interpretation recognizes that a sentence which includes probation is not final and is intended to provide the district court with a flexible alternative to monitoring a defendant's conduct while on probation, but reflects the need to alter a sentence that was not effective.  *Davis*, 2001 ND 85, ¶ 11, 625 N.W.2d 855.

[¶11] Dubois did not argue that his sentence was illegal in the district court, nor did he argue obvious error on appeal.  We conclude the court did not commit obvious error because it did not deviate from our longstanding precedent.

[¶12] We affirm the judgment.

[¶13] Lisa Fair McEvers
        Daniel J. Crothers
        Gerald W. VandeWalle, C.J.

**Jensen, Justice, concurring specially.**

I

[¶14] The majority opinion is well written and follows this Court's precedent regarding revocation of probation and resentencing a defendant. I concur in part I of the majority opinion outlining the facts and part II of the majority opinion affirming the revocation of Dubois' probation for the commission of a subsequent criminal offense. I also concur in part III of the majority opinion concluding the district court did not abuse its discretion in resentencing Dubois by not providing a factor-by-factor analysis of the statutory sentencing factors. Part IV is also well written, adheres to our precedent and, after determining the issue was not raised below, applies the obvious error standard of review to affirm the district court. I concur in the result of part IV. However, I write separately because N.D.C.C. § 12.1-32-07(6) unambiguously limits resentencing in this case to the previously imposed suspended sentence, and if the issue had been raised in the district court, the appropriate result would have been to reverse and remand this case for the imposition of a sentence consistent with Dubois' prior suspended sentence.

II

[¶15] In 2017, Dubois was originally sentenced to eighteen months of incarceration with all but ninety days suspended during a period of eighteen months of supervised probation. In January of 2019, the district court revoked his probation and resentenced him to five years of incarceration. On appeal, Dubois argues the new sentence is illegal because the term of imprisonment exceeds the suspended balance of the eighteen-month term to which he was originally sentenced. Dubois relies upon the language of N.D.C.C. § 12.1-32-07(6), which states:

> The court, upon notice to the probationer and with good cause, may modify or enlarge the conditions of probation at any time prior to the expiration or termination of the period for which the probation remains conditional. If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing

5

probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-32-02 or 12.1-32-09 at the time of initial sentencing or deferment. *In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant.*

(Emphasis added.)

## III

[¶16] The majority opinion accurately notes our Court has held that a district court may impose any sentence available at the initial time of sentencing upon revocation of probation, even when the prior sentence has suspended execution of some or all of the sentence. Applying an obvious error standard of review, the majority affirms the judgment sentencing Dubois to a term of imprisonment exceeding the prior suspended sentence. To understand how we reached where we are today, we must start with this Court's decision in *State v. Vavrosky,* 442 N.W.2d 433, 437 (N.D. 1989).

[¶17] In *Vavrosky* the Court was asked to interpret and apply the language of N.D.C.C. § 12-53-11 which read, in part, as follows:

> "The court . . . may revoke the suspension of the sentence of a person convicted of a felony and placed on probation and may terminate the probation and cause said person to suffer the penalty of the sentence previously imposed upon him, if the court shall determine . . . that the probationer has violated any of the rules and regulations prescribed for the conduct of probationers."

When *Vavrosky* was decided N.D.C.C. § 12.1-32-07(4), the predecessor of N.D.C.C. § 12.1-32-07(6), did not include the final sentence currently included in N.D.C.C. § 12.1-32-07(6). That language was included within N.D.C.C. § 12-53-11. This Court declined to apply the directive provided by N.D.C.C. § 12-53-11 to impose the suspended sentence upon revocation by concluding as follows:

6

Section 12.1-32-07(4), on the other hand, was enacted by the Legislature in 1973 as part of a comprehensive revision of our criminal code. See 1973 N.D.Sess.Laws Ch. 116, § 31. It was obviously intended to be the paramount legislation not only in defining criminal offenses but also in the area of sentencing and probation. Thus, even if there is a conflict between the two sections, and we do not concede there is, Section 12.1-32-07(4) controls.

[¶18] This Court issued the decision in *Vavrosky* on June 27, 1989. Before it was published the Legislature took the following action, effectively eliminating the rationale that would subsequently appear in *Vavrosky*:

Chapter 12-53, N.D.C.C., was repealed by the 1989 Legislative Assembly (S.L. 1989, Ch. 158, § 18). Section 12.1-32-07(4), N.D.C.C., was renumbered as 12.1-32-07(5), N.D.C.C., and amended by adding the following sentence: "In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant." S.L. 1989, Ch. 158, § 4.

*State v. Gefroh*, 458 N.W.2d 479, 483 (N.D. 1990). In *Gefroh*, this Court interpreted that action as the Legislature impliedly adopting our construction of those sections. *Id.* at 483-84. This Court went on to conclude as follows: "We adhere to our decision in *Vavrosky* and hold that § 12.1-32-07(4), N.D.C.C., authorized the district court to increase the length of the sentence imposed, but suspended, upon resentencing *Gefroh* after revocation of his probation." *Id.* at 484. Since our decision in *Gefroh,* this Court has mechanically applied, without further analysis, *Vavrosky* and *Gefroh's* holdings to eliminate the directive contained in the last sentence of N.D.C.C. § 12.1-32-07(6) requiring a district court to impose the suspended portion of any sentence upon the revocation of probation.

[¶19] The continued application of *Vavrosky* to eliminate the directive contained in the last sentence of N.D.C.C. § 12.1-32-07(6), which requires the imposition of the sentence previously imposed on the defendant, is not appropriate. First, as conceded by the State, ignoring the final sentence of

N.D.C.C. § 12.1-32-07(6) eliminates any purpose for imposing a "suspended sentence." Currently, a "suspended sentence" has neither meaning nor application because the subsequent revocation and resentencing are treated the same as any other sentence.

[¶20] Second, the original rationale of this Court in *Vavrosky* was premised upon N.D.C.C. § 12.1-32-07(4), the predecessor to N.D.C.C. § 12.1-32-07(6), being "paramount" legislation justifying the suspended sentence language of N.D.C.C. § 12-53-11 not be applied. However, *Vavrosky* was issued after the Legislature had already taken action to repeal Chapter 12-53 and amended the N.D.C.C. § 12.1-32-07(4) to include the suspended sentence language from N.D.C.C. § 12-53-11. What actually occurred was the Legislature placed the language at issue in this case into the "paramount legislation" from the subordinate legislation. The Legislature must have believed the language had some meaning. The Legislature certainly would not have moved the language from the repealed Chapter 12-53 if it did not have any application. The Legislature had effectively eliminated the rationale relied upon for the opinion in *Vavrosky* before the opinion was even published.

[¶21] Third, one year after our opinion in *Vavrosky*, and before the Legislature reconvened for another session, this Court issued its opinion in *Gefroh*. There we proclaimed the repeal of Chapter 12-53 was evidence of the Legislature impliedly adopting our construction of those sections. *Id*. at 484. There are at least three problems with that explanation. One problem is the Legislature passed the repeal prior to the *Vavrosky* opinion being published. It is improbable that the Legislature adopted our rationale, as stated in *Vavrosky*, by taking action prior to the issuance of the opinion. A second problem is the Legislature had not reconvened between the issuance of the *Vavrosky* opinion in June of 1989 and the issuance of the *Gefroh* opinion in 1990. I decline to proclaim "legislative acquiescence" based on action prior to our Court issuing an opinion or based on inaction between legislative sessions.

[¶22] Yet another problem was the Legislature did not eliminate the suspended sentence directive when it repealed Chapter 12-53 as appears to be assumption in *Gefroh*. To the contrary, it took that specific directive and added

8

as the last sentence of N.D.C.C. § 12.1-32-07(6). *Gefroh* simply adopts the conclusion from our prior decision in *Vavrosky* without any new analysis or recognition the suspended sentence directive had been added to N.D.C.C. § 12.1-32-07(6). This is problematic since the rationale for *Vavrosky* was to ignore the Legislature's directive to treat suspended sentences differently because it was not included within the paramount legislation dealing with probation revocation. The *Gefroh* opinion does not recognize that prior to *Vavrosky*, and effective within months after *Vavrosky*, the Legislature had moved the suspended sentence language into the paramount legislation. The rationale upon which *Vavrosky* was issued had been eliminated by legislative action. Rather than legislative acquiescence, as stated in *Gefroh*, the Legislature had taken action contrary to the rationale of the *Vavrosky* decision. No subsequent decision has offered new rationale for ignoring the unambiguous language of the statute.

[¶23] The United States Supreme Court has recognized the doctrine of *stare decisis* is diminished "when the precedent's underlying reasoning has become so discredited that the Court cannot keep the precedent alive without jury-rigging new and different justifications to shore up the original mistake." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 379 (2010). No new rationale for ignoring the unambiguous language regarding suspended sentences has been offered by this Court subsequent to *Vavrosky*. Therefore, this Court must necessarily continue to rely on "paramount legislation" rationale of *Vavrosky*. That rationale was eliminated by the Legislature before the *Vavrosky* opinion was even issued, effective within months after *Vavrosky* was issued. *Stare decisis* does not control when adherence to the prior decision requires "fundamentally revising its theoretical basis" and *stare decisis* certainly should not carry the day when the original rationale has been eliminated and no alternative rationale has been proposed.

[¶24] In rejecting the application of *stare decisis* in *Citizens United*, the United States Supreme Court provided the following summary:

> To the extent that the Government's case for reaffirming *Austin* depends on radically reconceptualizing its reasoning, that

9

argument is at odds with itself. *Stare decisis* is a doctrine of preservation, not transformation. It counsels deference to past mistakes, but provides no justification for making new ones. There is therefore no basis for the Court to give precedential sway to reasoning that it has never accepted, simply because that reasoning happens to support a conclusion reached on different grounds that have since been abandoned or discredited.

Doing so would undermine the rule-of-law values that justify *stare decisis* in the first place. It would effectively license the Court to invent and adopt new principles of constitutional law solely for the purpose of rationalizing its past errors, without a proper analysis of whether those principles have merit on their own. This approach would allow the Court's past missteps to spawn future mistakes, undercutting the very rule-of-law values that *stare decisis* is designed to protect.

*Citizens United*, 558 U.S. at 384 (2010). The original rationale for ignoring the unambiguous language related to suspended sentences no longer exists, and had in fact been eliminated before the rationale was even stated by this Court. We should not adopt or invent new principles for the purpose of rationalizing our past errors.

[¶25] Fourth, the language of N.D.C.C. § 12.1-32-07(6) is unambiguous and reads as follows: "In the case of suspended execution of sentence, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant." The State appears to concede the language is unambiguous, relying exclusively on our decision in *Vavrosky* and subsequent cases to support its argument.

[¶26] The meaning of the final sentence of N.D.C.C. § 12.1-32-07(6) becomes even clearer when you compare the final two sentences. Together, those sentences read as follows:

If the defendant violates a condition of probation at any time before the expiration or termination of the period, the court may continue the defendant on the existing probation, with or without modifying or enlarging the conditions, or may revoke the probation and impose any other sentence that was available under section 12.1-

10

32-02 or 12.1-32-09 at the time of initial sentencing or deferment. *In the case of suspended execution of sentence*, the court may revoke the probation and cause the defendant to suffer the penalty of the sentence previously imposed upon the defendant.

(Emphasis added.) The first of those two sentences establishes a general rule allowing the court to revoke probation and "impose any other sentence that was available." The second sentence is a clear exception to the general rule and begins "[i]n the case of suspended execution of sentence." There is no ambiguity in what the Legislature intended.

[¶27] Fifth, I do not believe there is a compelling rationale for continuing to follow judicial decisions contrary to the unambiguous language of the statute. Although there would be a number of sentences impacted by applying the statute as written, the number would not be overwhelming. Some sentences violating the statute would be less than the suspended sentence. In those cases, the State could use its discretion and decline to seek correction of the sentence. Some sentences may exceed the remaining length of the suspended sentence. In those cases, I would error on the side of protecting the rights of the individual defendants, rather than avoiding any administrative inconvenience caused by having to resentence defendants correctly under N.D.C.C. § 12.1-32-07(6).

[¶28] The justification for continuing to follow an incorrect judicial decision based on the potential impact on previously imposed sentences would be an application of the "reliance" analysis often coupled with the consideration of *stare decisis*. I question whether this Court should even apply the "reliance" analysis in a future challenge to our prior decisions.

> Considerations in favor of *stare decisis* are at their acme in cases involving property and contract rights, where reliance interests are involved, *see Swift & Co. v. Wickham*, 382 U.S. 111, 116, 15 L. Ed.2d 194, 86 S. Ct. 258 (1965); *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 50 L. Ed. 2d 550, 97 S. Ct. 582 (1977); *Burnet v. Coronado Oil & Gas Co., supra,* at 405–411, (Brandeis, J., dissenting); *United States v. Title Ins. & Trust Co.*, 265 U.S. 472, 68 L. Ed. 1110, 44 S. Ct. 621 (1924); *The Genesee*

11

*Chief v. Fitzhugh*, 53 U.S. 443, 12 How. 443, 458, 13 L. Ed. 1058 (1852); the opposite is true in cases such as the present one involving procedural and evidentiary rules.

*Payne v. Tennessee*, 501 U.S. 808 (1991). It is possible a future defendant, sentenced to the actual suspended sentence on revocation, may argue they relied on the possibility of a future probation revocation sentence less than the suspended sentence. That issue is not presented here and, if necessary, can be addressed in future cases.

[¶29] This Court has recognized "the [*stare decisis*] rule is not sacrosanct." *Abbey v. State*, 202 N.W.2d 844, 852 (N.D. 1972). *Stare decisis* should not apply when the precedent to follow is a "product of mechanical adherence to the latest decision." *C.R.C. v. C.R.C.*, 2001 ND 83, ¶ 40, 625 N.W.2d 533 (Neumann, J., concurring). The underlying rationale for *Vavrosky* and *Gefroh* was eliminated by the Legislature. The cases following those decisions were mechanical applications of those two decisions without the expression of any new rationale. The statute at issue is unambiguous and contrary to our prior decisions. We should not continue to compound our error in the face of such overwhelming justification for taking action.

[¶30] This case arises as the result of a defendant receiving a sentence in excess of the previously suspended sentence. However, it is possible this issue may return to this Court at the request of the State, following the imposition of a sentence less than the previously suspended sentence. The analysis should not change and N.D.C.C. § 12.1-32-07(6) should be applied to impose the suspended sentence.

IV

[¶31] I concur in parts I, II, and III of the majority opinion. I concur in the result of part IV of the majority opinion only because the issue was not raised below and is subject to our obvious error standard of review. Had the issue been properly raised, I would reverse the judgment, remand this case for

12

sentencing consistent with the final sentence of N.D.C.C. § 12.1-32-07(6), and direct the imposition of the defendant's suspended sentence.

[¶32]  Jon J. Jensen
      Jerod E. Tufte